LAMY, Judge.
The plaintiffs allege injury as the result of an intersectional collision they contend was caused, at least in part, by the intersection’s design. They contend that the angle of the intersection created a sight obstruction for turning vehicles. The trial court entered judgment in favor of the plaintiffs, assigning twenty-five percent of the fault to the left-turning motorist involved in the accident and seventy-five percent to the State. The State appeals, questioning the apportionment of fault. For the following reasons, we affirm.
Factual and Procedural Background
This case stems from a December 27, 1998 collision at the intersection of Tunica Drive and Acton Road in Marksville, Louisiana. On that date, Bruce Roy was southbound on Tunica Drive. He was accompanied by his wife, Sharlene Roy, his daughter and his daughter’s friend. The other vehicle, owned by Elaine Hudson, was operated by Ms. Hudson’s daughter, Rosaline Augustine. Ms. Augustine was northbound on Tunica Drive at the time and attempted to execute a left turn onto Acton Road. While she states that she proceeded into the intersection under a green light, she contends that the design of the intersection required that she travel underneath the traffic signal and, when she did so, her view of southbound traffic in the outside lane was obscured. She contends that a southbound vehicle on the inside lane stopped, and motioned for her to cross.[1] As she executed the turn, Mr. Roy’s vehicle was traveling south and hit the right rear tire of the Augustine vehicle. He contends that he entered the intersection under a green light.
| i>Mr- and Mrs. Roy filed suit naming Rosaline Augustine, her mother, the vehicles’ insurers, and the State of Louisiana through the Department of Transportation and Development. With regard to DOTD, the plaintiffs alleged the following:
The Department of Transportation and Development, through the State of Louisiana was negligent in that it had been notified and warned on numerous occasions of this dangerous intersection, that is, that Acton Road does not extend directly across Tunica Drive and left turning motorist[s] end up in a “no man’s land” which on numerous occasions has caused accidents at this intersection based upon the negligence of the left turning motorist and also based upon the negligence of the Department of Transportation and Development, which negligence is alleged herein to be a cause of the accident.
Prior to trial, settlements were reached and judgments of dismissal were signed as to Ms. Augustine, Ms. Hudson, and the insurers. The matter proceeded against DOTD.
Following a bench trial, a judgment was returned in favor of the plaintiffs. The *1252 trial court assigned seventy-five percent of the liability for the accident to DOTD and twenty-five percent to Ms. Augustine. Damages were awarded for the plaintiffs’ injuries. DOTD appeals.
Discussion
In its sole assignment of error, DOTD contends that the trial court erred in assigning it seventy-five percent of the fault in causing the accident. Instead, it contends that Ms. Augustine was the sole cause of the accident. DOTD observes that Ms. Augustine was a left-turning motorist, which requires the exercise of a high degree of care, that she did not stop at the stop bar in her lane of travel prior to executing the turn, and that she relied on another motorist to “wave” her through the intersection. In its brief, DOTD argues that if Ms. Augustine had “stopped at the designated Stop Bar and had she looked to ascertain whether the way was clear, and |sfinally had she not relied upon another driver’s motion to execute her turn, but-for these things, all within the exclusive control of Ms. Augustine, this accident would not have occurred.”
First, we observe that there is no question that Ms. Augustine was at fault in causing the accident, as urged by DOTD. Indeed, the record supports a finding that she attempted the left turn without being aware of whether she could do so safely. Thus, much of what DOTD argues is supported by the record. The inquiry does not end with this finding, however, as the trial court was required by La.Civ.Code art. 2323, to apportion fault between all of the parties causing the alleged injuries. Article 2323 requires:
A.In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, -ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other persons’ identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tort-feasor, his claim for recovery of damages shall not be reduced.
Notwithstanding Ms. Augustine’s fault, a question remains whether DOTD was also at fault.
|4The plaintiffs alleged that DOTD was negligent in its design of the intersection and in its failure to correct the hazardous condition when notified of the problem. Whether a plaintiff pursues DOTD under a theory of negligence or of strict liability, he or she bears the burden of demonstrating:
(1) DOTD had custody of the thing that caused the plaintiffs injuries or damages;
(2) the thing was defective because it had a condition that created an unreasonable risk of harm;
*1253 (3) DOTD had actual or constructive knowledge[2] of the defect and failed to take corrective measures within a reasonable time; and
(4) the defect in the thing was a cause-in-fact of the plaintiffs injuries.
Netecke v. State ex rel. DOTD, 98-1182, 98-1197, p. 7 (La.10/19/99); 747 So.2d 489, 494 (footnote added).
The trial court determined that the above elements, necessary for a finding of liability, were satisfied by the plaintiffs evidence. As for the first element, custody of the intersection, the trial court found that “[wjithout doubt, the intersection in question is clearly within the control and custody of the Department of Transportation and Development. It has been constructed, maintained and inspected by DOTD.” |RThis determination is supported by a stipulation entered by the parties at the beginning of trial indicating that DOTD had custody of the intersection at the time of the December 27, 1998 accident.
As for the next element, the presence of an unreasonable risk of harm, the trial court found:
Additionally, the testimony of Duaine Evans, plaintiffs expert in traffic engineering and accident reconstruction, reflects that the intersection where the accident occurred was defective. Under the appropriate AASHTO guidelines, the intersection should have been designed to cross at ninety degrees or as near ninety degrees as practicable. An intersection designed where the crossing is below sixty degrees creates problems with visibility and travel time resulting in increased dangers to motorists. The intersection in question was calculated at approximately fifty degrees.
In considering the angle of the intersection, Mr. Evans stated that “the angle contributes some in that the driver making the left turn, has a longer distance to travel, in order the [sic] clear the intersection because of that low angle. That contributes to the exposure that that driver is subjected to on-coming vehicles.” Mr. Evans opined that the most efficient method of correcting the problem would be the installation of a protected left turn signal.[3] On behalf of DOTD, an expert acknowledged the fifty degree angle of the intersection, but testified that the addition of a protected signal light would present an inefficient flow of traffic through the intersection. Due to the difference of opinion, a credibility determination was required by the trial court, a decision made in favor of the plaintiffs’ expert and one that would be inappropriately disturbed on appeal. We also point out that, even DOTD’s expert testified that the phantom vehicle scenario testified to by Ms. I^Augustine could result in the creation of a momentary blind spot. Thus, the record supports the court’s determination that the intersection was defective in that it presented an unreasonable risk of harm.
*1254 Turning to consideration of whether DOTD had notice of the hazard presented by the intersection and whether it failed to act within a reasonable amount of time, the trial court referenced evidence of previous accidents at the intersection. One of these incidents resulted in litigation ultimately resolved with a stipulated judgment entered in 1994 in favor of the plaintiff and against DOTD. The plaintiffs’ expert witness, Mr. Evans, testified that he was involved in the investigation of this earlier accident and that, in his opinion, the condition of the intersection had not changed between the time of that accident and that at issue in this case. In considering this evidence of notice, the trial court explained:
As to knowledge of the defect, the evidence at trial is clear that the State knew of the defect at the intersection and had faked to take corrective action. Again, Duaine Evans gave his professional opinion that the intersection was defective and dangerous in a deposition given in 1994 taken by the State’s attorney; additionally, a representative of the City of Marksville testified regarding numerous city resolutions and correspondence to DOTD engineers about the danger of this intersection. In prior litigation in this court, Rodeisha Truitt v. DOTD, et al., the DOTD signed a stipulated judgment admitting liability in 1994. The testimony of Captain Carl Harvey further reflects that the Truitt accident which occurred at this same intersection, occurred in a substantially similar fashion to the accident at bar.
As referenced above, the plaintiffs also presented correspondence from the City of Marksville to DOTD requesting that studies be conducted at the intersections of Tunica Drive.[4] Although DOTD officials testified that studies conducted thereafter |7did not reveal conditions requiring the installation of signal lights, the trial court could have concluded that whether DOTD’s ultimate determination as to the necessity of the light was correct, the letters are evidence that it was put on notice of the intersection’s condition. Given the presence of this evidence, the trial court’s finding as to notice is supported by the record.
Turning to the final element of the burden of proof required of the plaintiffs, that of causation, the trial court summarized much of the evidence discussed above, concluding that the design of the intersection contributed to the accident as follows:
[Cjonsidering the evidence as a whole, the court concludes that there is a causal of [sic] relationship between the defective and dangerous intersection at the accident site and plaintiffs injuries. Although there are several causes in fact for this accident, the court finds that the defective design of the intersection was a substantial and contributing factor in *1255 bringing about this accident and plaintiffs’ damages. The court also readily recalls the testimony of DOTD’s own expert witness, Mr. Francis Wyble, concerning the need for preventing measures such as a left-turn signal affording protection for a left-turning motorist such as Ms. Augustine. It was his considered opinion that more likely than not that the installation of such a turning signal would have prevented this accident. Both Duaine Evans, plaintiffs expert, and Mr. Wyble, the State’s expert, testified that the defective design of the intersection was a contributing factor for the accident sued upon and both indicated in their testimony the installation of a protected left-turn arrow was economically feasible. The court was further impressed with the testimony of the State’s expert, Mr. Francis Wyble, whose trial testimony reflects that Mrs. Augustine’s vision of the Roy vehicle was momentarily obscured by a third vehicle stopped in the inside southbound lane of Tunica Drive. The stopped vehicle created a “cone of obscurement” for the left-turning driver proceeding as Ms. Augustine did on the day of the accident.
IsOur review of the record supports the above-finding. As previously discussed, the plaintiffs presented evidence of the substandard angle of the intersection, testimony indicating that a protected turn signal could have prevented the accident, and testimony indicating that a blind spot could have been created for a left-turning motorist. The trial court chose to accept this evidence. We conclude that this acceptance of the plaintiffs’ evidence and the trial court’s ultimate conclusion that both Ms. Augustine and DOTD were at fault in causing the accident was not manifestly erroneous. Neither do we find manifest error in the percentages assigned to each. Accordingly, we find DOTD’s assertion that Ms. Augustine should have been found to be the sole cause of the accident lacks merit.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this matter in the amount of $6,763.53 are assigned to the defendant, the State of Louisiana through the Department of Transportation and Development.
AFFIRMED.

. This "phantom vehicle” did not stop at the scene and the actions of the driver were not discussed in the trial court's apportionment of fault. Neither are they addressed by DOTD in its appeal.

. With regard to the element of "knowledge,” La.R.S. 9:2800 provides:
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.

. An engineer employed by DOTD, presented by the plaintiffs, explained that the expense of installation of such a signal would be approximately $18,294.55.

. Included in the plaintiffs’ evidence is a cover letter, dated December 17, 1990 from the Secretary Treasurer of the City of Marksville and addressed to the District Engineer Administrator of DOTD, and apprizing DOTD of resolutions passed by the City's Mayor and Board of Alderman wherein the City requests assistance with traffic control signals. The resolution, numbered 90-138, is attached to the cover letter and provides:
BE IT RESOLVED that the La.Dept. of Transportation and Development be and hereby is requested to conduct studies for the following:
1. To install a protected left-turn arrow for southbound traffic on Tunica Dr. (La. Hwy. 1) at its intersection with Acton Road (La. Hwy. 1189);
2. To prohibit left turns to southbound traffic on Tunica Drive (La. Hwy. 1) at its intersection with S. Preston St. (La. Hwy. 452).